May it please the Court, my name is Jay Spillane. I represent the plaintiff in this case, UNICOM, which is the exclusive owner of software known as the Pi CICS software, which UNICOM purchased from Technologic, or TSC. This is a case in which the magistrate judge committed reversible error by permitting the defendant, Farmers, to urge to the jury a theory of the case without legal basis, one in which Farmers charged UNICOM with exercising its exclusive rights as the copyright owner of the software in a manner that Farmers said violated good faith and conscience. UNICOM believed that Farmers had engaged in use of its copyrighted software without disclosure, without consent, and without payment, and it put that proof on at the trial. Farmers urged throughout the case, in its opening statements, during the trial, and in closing arguments, that the jury should reject UNICOM's claims because UNICOM supposedly jacked up its prices from what the prior owner had charged, refused to negotiate, rendered invoices which were partially incorrect, sent dunning letters by lawyers, supposedly sought to repossess the perpetual license for which Farmers incorrectly claimed it had already paid, articulated a theory as to what form of base product license agreement applied, and sent short-term passwords to pressure for payment. Now, UNICOM was entitled to engage in vigorous efforts to enforce its exclusive ownership to the copyrighted work, including demanding payment and using the access control devices which Congress said copyright users can use and can enforce in the Digital Millennium Copyright Act, but Farmers said no, and the vehicle through which Farmers drove its theory of the case was jury instruction number 57. An instruction on the defense of unclean hands that was an original work of authorship by the magistrate judge. It was not consistent with any pattern instruction, nor was it supported by any cases on point. One note as to the record, I apologize it wasn't entirely clear in the briefs. When we submitted the original briefs, I had omitted Farmers' submission of the unclean hands instruction. It's in the further excerpts of record at page 151. That proposed instruction by Farmers has citations to pattern instructions, but their proposed instruction didn't follow the pattern. The court adopted that proposed instruction the night before, the day before closing argument. That's at ER 390 and 567. And then as we've demonstrated in our brief, the court came out the morning of the jury instructions having apparently rewritten the unclean hands instruction the night before and read the instruction that appears at ER 494. I was struck by the relative vagueness of that instruction. But then I go and read the Kendall Jackson winery case and it says, but the misconduct need not be a crime or actionable tort. Any conduct that violates conscience or good faith or other equitable standards of conduct is sufficient to invoke the doctrine. It sounds like the law is just as vague as the instruction was. I don't doubt that the master judge or his clerk cobbled this instruction together from some quotations from some cases. But here's the problem I have, Your Honor. The cases out of this circuit and other federal courts that there are very limited circumstances under which a copyright owner may be held to have engaged in unclean hands or the companion doctrine of copyright misuse where essentially one commits fraud in connection with the acquisition or assertion of the copyright, or if one abuses one's monopoly in the copyright area to obtain an anti-competitive or otherwise unlawful result in another area. The evidence didn't fit that any of those circumstances. And, in fact, the jury concluded it was farmers that had defrauded Unicom by using a bypass device to unlock the access control device and engage in surreptitious, undisclosed, and uncompensated use of the software. There was a dispute of fact at trial over the use of this ZAP and whether it was appropriate. Was there not, under the guise of whether there was unclean hands here? Well, as part of their argument, which is basically Unicom was really over-aggressive and bad and we supposedly had to defend ourselves, farmers engaged in conduct which the jury found was a violation of Chapter 12 of the Copyright Act, which deals with bypassing access control devices. And we showed that they did that for the purpose of and with the result of engaging in undisclosed use of the software. But the problem was this was the substantial error and prejudice of the unclean hands instruction. We showed what we believed was the uncompensated and undisclosed use. Even the admitted use by farmers had substantial elements that they never disclosed or paid for. There's a graphic on page 25 of my principal brief which allows you to see it neatly with the eye. And then we sought to prove by evidence that the use was even greater than that to which farmers had admitted. And we showed what the license fees were for the undisclosed and uncompensated use. What the jury did is it found that farmers fraudulently concealed that use and awarded a sum of damages, which we found a little bit puzzling and I'll go on to that in a moment. But it necessarily in doing so agreed with us that farmers engaged in at least some use for which they had not disclosed or paid. Now, you think you got zero for the copyright and the circumvention claim because of the unclean hands. Was there any other defense that was a complete defense like this? I don't think so. I think the jury would. That the jury could use as a complete defense like this? I don't believe so. When the jury came in at nothing, did you ask, did you tell the judge that you believe that a finding in your favor on liability and no damages was inconsistent? And ask the jury to go back and consider that? We made that argument in the new trial motion. I didn't say that then and there at the trial. But my concern is that, and we're all struggling to figure out what the jury did, but my concern, I think it's the most likely explanation, is the jury was confused into feeling that because Unicom may have asserted its contract rights and Unicom may have asserted its copyright rights in a manner which the jury found somehow lacking in good faith and conscience, what they were supposed to do was either find against Unicom, which is what they did on the contract, or find for Unicom a copyright but put zero damages because that's what the instruction suggests. But, Your Honor, since the jury found that there were damages for the fraud and the singular damage theory at trial was lost license fees, which I know Mr. Wilton is going to criticize, but you can claim lost license fees under a fraudulent concealment theory just as you can in a copyright or a contract theory, their conduct must necessarily have been either a breach of contract or copyright infringement or both. Those were the other two theories which we had for uncompensated and undisclosed use. And it would be contract if it was use which breached the covenant of the license agreement. It would be copyright if it was use which went beyond the scope of the license. So, to me, the result is inexplicable except if one accepts the theory that the jury was encouraged to reject the contract and copyright claim because of the unclean hands instruction. To me, the result here really violates an important policy of the Copyright Act. The Copyright Act has vested copyright owners with the exclusive right to its work, including the right to condition use of the work on payment, and to frankly threaten a licensee with denial of access to the work if they're not going to pay for the use. Congress has encouraged copyright owners to place access control devices in their works to protect them. And what any copyright owner is going to have to be concerned about here with the results of this case is if you act too aggressively to assert your rights, if you have lawyers send letters demanding fees, if you use the access control device as a way to possibly deny the licensee access to the work, what can happen is you can go to trial, the licensee can get this impossibly vague unclean hands instruction and just argue anything that falls under the rubric of good faith and conscience, and the jury could possibly conclude that the licensee should get away with uncompensated, possibly undisclosed use of the software for free because you exercise your rights as a copyright owner in a manner which is supposedly a lack of good faith if anyone knows what that means. And I think that would subvert the purposes of the Copyright Act. Can we go on to the admission of the purchase price paid for, that Unicom paid for the software? Yes. Here's what I want to know. Did either side's experts or in any other way quantify the diminution in value of the software by reason, or use that as a theory of measure of damages, the diminution in value of the software? No. The manner in which farmers used the purchase price, they went hand-in-glove with their unclean hands theory, which is they simply said, wow, you guys paid $10 million for this whole fleet of software, and for this one software, for this one licensee, you're asking for a really big damage award. I've got the words quoted, but that just went beyond all reason. So the trial judge gives this instruction that says that that evidence can be used, or I mean that's the theory under which that evidence can be used, is the damage instruction that talks about the diminution in value of the software. If nobody had any evidence about it from experts or otherwise, did you object to that instruction? The instruction that I recall, which I believe in copyright law, is that the way you're supposed to determine damages for loss of, or for use of a copyrighted work that wasn't compensated was the market value of that software. And under the Polar Bear case, which both sides cite... Like a fair licensing. The license, and here were worthy of... But there was an instruction that talked about the diminution in the value of the software as a measure of damages. Was there not? I'm sorry, I don't recall that one. Okay. I thought we gave the pattern instruction from the Ninth Circuit on copyright damages, which under the Polar Bear case correctly talks about market value, and here the only market is what Unicom wants for its software because it's the exclusive owner. Counsel, with regard to the purchase price issue, why shouldn't we find that you waived your objection to the admission of that evidence when you were the first to introduce it at the trial? The Supreme Court told us in Oler that in criminal cases the rule is that you waive the objection when you do that. Why shouldn't the same rule attend in civil cases? I found Oler unpersuasive for the reasons I set forth in my brief. The circumstances, I think, in a criminal case are different than the ones that are present in a civil case. But even if Your Honor disagrees with me on the point that I've briefed and... I understand how. What's different? They're different, but does that help you? One's civil and one's criminal, but I think it's got to be something more than that. I'm satisfied with the way I argued that in my brief. It's in the third brief. If you want to rest on your brief, that's fine. Yeah, but there's another point because I think the more... That is an issue in our appeal, but another way in which I think this purchase price is compelling in our way is the only manner, if it properly came in because I referred to it, the only manner in which farmers used it is to have its expert let out this sort of low whistle and say, wow, that's a really big damage award you're trying to get, which was part and parcel of farmers' overall theme, which was my client was greedy, pushy, and nasty, and because you should find that to be lacking in good faith and conscience, you should reject our claims. I do want to, because I see the time running, devote just a couple of moments to the questions of notice and attorney's fees, which are also important to us. The only other... Aside from the likelihood that the jury accepted the unclean hands defense in the manner in which it gave the rejection of the contract claim and the zero damages on copyright and circumvention, the amount of damages awarded for the fraud was certainly puzzling and we think consistent only with farmers' theory of notice because of the amount of damages and also the set-off, and it's important for your honors to understand when Unicom bought the software, if farmers had not engaged in any change in its use, there would have been no event which would have made the current price for the software charged by Unicom relevant. In other words, if you didn't move the software to a previously unauthorized CPU and if you didn't change the capacity, then farmers is paid up and it pays its maintenance fees based upon the already quoted license. The only reason why the current price is relevant is if you engage in change in use, either upgrading a CPU or changing. So on the only three occasions in which farmers disclosed to Unicom that it intended to upgrade CPUs which were authorized CPUs, it gave Unicom mere days of notice that this was to occur. Unicom immediately quoted the price that would apply to the upgrade. In two of the three occasions, farmers negotiated downward the price that Unicom had quoted, obtained a concession, and wrote a check. Those are the undisputed facts in the case. And of course, Unicom didn't have an opportunity to tell farmers about all the other upgrades and uses that they engaged in because they had the ZAP in their pocket and never disclosed it to us, so we didn't know we had a reason to tell them about the prices. And so I feel with the evidence being undisputed, we can resolve as a matter of law that farmers had notice and waived the formalistic requirement of mailing of a price sheet with a return receipt requested. Why couldn't the jury look to the prior course of dealing between the predecessor in interest to Unicom and farmers in order to resolve the notice issue? Because Unicom did change the way that it provided notice of price increases to farmers, did it not? I believe the evidence was Unicom acted consistent in the manner that the predecessor, TSC, did, which is when you're told that there is a change in configuration requiring a new license fee, then you communicate what the price that would obtain is. And that was done in the form of a price schedule. Unicom, as I understand it, simply sent an invoice. The same information is communicated. I can send you a price schedule that says the current price for the software is X, or I can send you an invoice that says the current price is X. It's getting the information out of the way. But the price schedule, as I understand it from, was it TSC? Yes. Was sent 60 days in advance before it became effective, right? TSC, in addition to invoicing, sent an abstract, yes, hi, here's our new prices. But unless you have an event of a change in configuration, a new CPU, there's nothing to which the new prices will apply. Here, Unicom only learned of the changes days before they were due to occur. I understand all of that. But at some point before, farmers would have had to tell TSC, we're going to upgrade or make a change, and that would have triggered from TSC an issuance of a price list. Yes, but if farmers tell you we're going to upgrade in five days, how can you give farmers 60 days notice of the price that would apply? They've told you in five. Was there any proof as to how much notice farmers gave TSC before? No, there was proof as to how much notice farmers gave Unicom. I've got it in my brief. It was three, four, five, six days, that kind of a thing. Okay. But the jury had before it the evidence of the prior course of dealing between TSC and farmers on this issue? We had testimony from Mr. Politaski, who was the president. As to how that worked? Your Honor, I don't find that the license agreement required both a formal and abstract mailing of our price sheet on January 1, when you did tell the licensee of the fees that were obtained for the use, when they told you that the use was going to occur. I have an important point on attorney's fees, please. I've set forth in both briefs, I think it's elaborated best in the third brief, why I feel that the imaginative judge erred as a matter of law in awarding, essentially conducting two separate prevailing party analyses and awarding fees to Unicom under the Copyright Act and fees to farmers under the contract. I've set forth why I believe under California law, attorney's fees are a matter of costs. Costs go to the prevailing party. We prevailed both under the language of the agreement and under the definition in California law, which is the prevailing party is the one who got a net positive award, and that was us. And I don't think farms correctly set forth any aspect of 1717 or the various cases we've all argued, which authorizes the result in this case, which is to find that there should be a fee award to the copyright owner under the Copyright Act, but then do a separate prevailing party analysis under the license agreement and essentially set the two fees off. And here's my question. We had in this case the issue that you, Judge Schroeder, dealt with in the Sun Microsystems case, which is is the conduct of breach of a covenant in a license agreement or is it beyond the license and therefore copyright infringement? So we pled both. And what are copyright owners to do if because you want to cover both bases and you plead the license agreement and copyright infringement, are you faced with this Hobson's choice where if the jury shifts, goes with one theory or the other, you're going to have a win on one and a loss on the other and two separate fee awards? I think that subverts the purposes of the Copyright Act and is contrary to the policies we've quoted in our brief that license agreements should be interpreted so as to support and not undermine the purposes of the Act. Okay, you've more than used your time. Thank you. A case court, Kenneth L. Wilton on behalf of Farmers Group, Inc. Mr. Wilton, would you help this? I'm just speaking for myself. My colleagues apparently understand this better than I. But I don't understand how the unclean hands doctrine, if I understand it, comes from California law, does it not? Correct. So it applies in the contract phase of this action? It applies in the contract phase based on the case law that we found. Okay. And did it affect the infringement claim as you understand it? Our position is that the jury came to a completely consistent verdict on all five claims. I'm answering your question. Yeah, I understand that. Please go on. And fundamentally, with regard to the first four claims, the issue was did farmers use the software beyond what it paid for? Did it use the software beyond the MIPS capacity that it had already paid for? And jury note number three, which is in the record, I'll find it in a second. Jury note number three, the jury asked the question, if we find that there is circumvention but that Unicom was not harmed, can we award punitive damages? If you look at that question in conjunction with the first three claims as well, the only conclusion that you can draw is that the jury said farmers did what it was supposed to do. It stayed within its MIPS capacity. There's substantial evidence to support that because we had our client's testimony that they had a group that did that. That's what they did for a living, for all the licenses. So they knew that they had a capacity of 5,000. Even where you applied the ZAP? Even where your client applied the ZAP? Even where the client applied the ZAP. The evidence of use was purely circumstantial on both sides. For a variety of reasons, there's no direct evidence of it. The evidence that farmers gave was that they had a group of a team, about 10, 20 people, and their job was with regard to all the licenses and all the CPUs, when you upgraded a CPU, make sure we stay within the capacity limits of each of our pieces of software. And if that means we move it from A to B or B to C in order to maintain that capacity limit, that's what they did. And with regard to the ZAP, all the ZAP allowed them to do was move the software from A to B without getting a new password. We're paying. We're paying the license. We're paying if, in fact, the movement resulted in an increase in MIPS capacity. Mr. Politowsky testified that if it was even... If it was that benign, you wouldn't have paid $5,000 to the guy to do it for you. You would have got... Your client would have gone back to Unicom. Are you trying to claim that the ZAP is an appropriate thing for your client to have done under the circumstances? What I'm trying to claim is that the ZAP, under the circumstances... I'm not saying it's the right thing to have done, but under the circumstances, it was the thing to do in order to avoid what was happening with Unicom. What was happening with Unicom is Unicom was charging, for example, for maintenance. Maintenance automatically terminated. What Unicom said is, if you don't pay maintenance for the next year, we're going to withhold your passwords, so you can't use your software anymore. And they gave short passwords trying to convince farmers to do that. And so, combined with the... I thought that was just the practice of the predecessor, that you'd get a temporary password, and then when you paid for the upgrades, then you got a longer password. Mr. Polakowski testified that he never used that to extort payment. You get a temporary password of 30 days or so. You get payment. You get the permanent password, which is also only about a year, I think. Sometimes a few more than that. But the course of conduct from July of 2000 through October of 2001 was essentially that Unicom took the agreement, the old course of conduct, and said, we're going to ignore it. We're not going to provide notice of price increases. We're going to chart. They sent letters saying, even though they had in their records that farmers had licenses for five CPUs, they sent letters saying, you owe us money for three CPUs that aren't licensed. Okay. I'm sorry. I diverted from where we started, and we should go back there. It's not a puzzle, but it's consistency. And it's unclean hands, the same standard under the California common law claims as the copyright claims. And it looked like the jury instruction applied the same one to all of them. That's correct. That's our position. It's the same standard. There was no request for a limiting instruction in terms of which claim it should apply to. And frankly, our position is that the bottom line, the jury didn't follow the instruction. The instruction said that if you find unclean hands, you should not award any damages to Unicom. And what it did is it eliminated them. Even under the fraud claim. Pardon? Even under the fraud claim. The unclean hands was a complete defense to fraud. I don't know if it was. It was allowed to be a complete defense to fraud. There is case law that says you can assert it in a fraud claim. This is in California? California. Yeah. Make a very short list of everything they did that you claim constitutes unclean hands. They failed to provide notice under the contract. They sent letters claiming that they were owed license fees for CPUs that previously had been licensed. They sent letters claiming that they were owed maintenance fees or maintenance fees were terminated. Maintenance was terminated as under the agreement. And they refused when they were sent letters with copies of these various documents saying here's our licenses. They refused to listen to them. And then they proceeded. It sounds like you had a disagreement under the contract terms. And they sent you a bill. That doesn't sound very bad to me. Tell me why it's bad. It's bad because they used the last part of this idea is they used these seven-day passwords that would shut down the software. Software used by farmer's agents. And they used these seven-day passwords to convince farmers to pay millions of dollars in fees if farmers wasn't owed. That's the bad act. That's the end bad act that we were alleged. But still at the bottom line, Unicom is not objected to the introduction of any of this evidence. It's simply objected to the one instruction that at the end of the day the jury didn't follow. So if I may move quickly on to the purchase price, which in our view there's no reason why the older case shouldn't be followed in a civil context. In fact, if one walks down the road that you can bring a motion in limine, have it denied, and then introduce the evidence yourself and then claim error, you're inviting error. That's exactly what's happening here. They brought it in. They introduced it in an opening statement. They introduced it through their first witness. And now they claim that it should never have come in. Which evidence is this? The purchase price. Purchase price. And frankly, at the end of the day, that evidence also was harmless in the sense that nobody relied upon it. There's no evidence. Except that you got to argue that they're greedy for making so dang much money on a thing. And that doesn't seem to apply to any of the claims that were in the litigation. If I may, Your Honor, the damages for almost all of the claims for circumvention related with actual damages, that's in the jury instruction number 43, which is at 478 in the record. For trade secret misappropriations, Unicom may recover damages for the actual loss caused by misappropriation. That's instruction number 51. For copyright, in answer to a question that you posed to Mr. Spillane, the copyright instruction, which is number 40, which is at 470 in the record, said that actual damages means the amount of money adequate to compensate the copyright owner for the reduction of the fair market value of the copyrighted work. There's no objection to that instruction. Did you have any evidence about the reduction of fair market value of the copyrighted work? We did not present any evidence other than So what's the jury supposed to do with that other than speculate? Good question. I don't know what the jury is supposed to do with that. But the jury had the purchase price evidence if it wanted to rely on it in some fashion to create a floor for damages. But at the end of the day, the jury found that there wasn't any use beyond the scope. Is our position on that with regard to. I think you made a comment about complete defense. The actual defense that we raised. And I apologize that I realize I have. Well, the instruction said it could be used to bar damages. That's what I meant by complete defense. And that's why I figured they got zero on those claims, because it was a bar to damages. And so they got zero. And so if I was looking to see if there was any other way that there would have been a bar to damages. That's what I meant by that question. You're talking. You're talking about unclean hands. Yes. Yes. There was another instruction, which is really in our closing argument is the next instruction that was discussed, which was instruction number 21, which is characterized as repudiation. That's not truly repudiation. It's a substantial performance instruction. And the instruction itself was in the second amended joint proposed jury instructions. It was agreed upon instruction. And it was the instruction that said that. Farmers contended that Unicom did not perform all of the things that it was required to do under the contract, and therefore farmers did not have to perform its obligations. It was introduced for a very narrow purpose. And the very narrow purpose was, and it's stated in the closing argument, was that farmers didn't have to ask for permission to move the software from CPU A to CPU D. Didn't have to ask for that piece of paper that said, OK, now it's an authorized CPU. That's why we use that instruction. That, assuming the jury agreed with that, that the actions of Unicom in various ones I've listed resulted in farmers not being required to ask for product schedules, we move away from the authorized CPU argument, and now it's a question of did farmers use the software in a manner exceeding 5,079 MIPS. And based on the conflicting evidence, the jury concluded yes. So in that sense, it's not a complete bar to damages, but it's certainly an explanation as to why, on the first four claims, the jury found no damages or no liability. With regard to notice, I'm not sure there's too much to be said about it. The notice requirement, I think you notice that Judge Politosky testified that he sent out the notice whenever we change our prices and everybody would get a copy. They sent it out in half a day. Farmer's testimony was that this was important because in order to do the balancing that I was referring to, when you have multiple pieces of software and multiple CPUs, multiple pricing schemes, you have to make the choice. If I leave this software on this CPU, which is now increasing to such and such a capacity, I'm going to owe more fees. So what farmer's personnel did is they go to the fee schedules and they say, OK, how much will it cost if I increase the capacity of CPU A to another 500 MIPS? You go through the list of all of the pieces of software, all of the price schedules, you come up with a number. They said, OK, now I have the number for that, what if I move it in different ways? It's a multiple variable problem. The problem that happened here is even though farmers have negotiated specifically for the addendum that says we will get notice, 60 days notice, it wasn't given. So they made these decisions based on old price schemes and said, OK, we're going to increase the capacity of a certain CPU. They tell Unicom we've done this. They have an expectation of what the price is going to be, and Unicom comes back with an invoice at a completely different price. I've never seen a set-off based in essence breach of contract as a set-off to a fraud. Can you give me authority for that? It's, I can't give you authority for a set-off to a fraud, but the whole set-off statute is when you have competing claims for money. So if you have. Yeah, and here we have, it's based, the set-off is based on a breach of contract and being set-off against fraud damages. I've just never seen that before. I think this case, I'll say, is unique. I would agree. It is definitely unique. And I'm not making light of it, but on the other hand, we raised the set-off claim against all of the claims that were asserted. As it turned out, where the jury found was only on fraud, and the monies it awarded on fraud were monies that to some extent, Well, not even to some extent. We're unrelated to the damages sought on the other claims. And explain to me real briefly how you get a set-off in the first place when your breach of contract claim was gone. You're claiming the set-off is a breach of contract. You're saying you didn't get the notice and therefore you shouldn't have to pay the fees. Correct. Your contract, breach of contract claim was dismissed or dismissed on summary judgment or you dismissed it? How did it go? It went? It was dismissed on statute of limitations grounds. So why isn't this just the set-off, a circumvention of the claim that you had dismissed? Because that's exactly what the set-off statute provides, is when you have coexisting conflicting claims for money and you don't assert it for whatever reason. How can it be coexisting if it's dismissed? At the same time. Both sides have claims against each other. And frankly, the reason why. How can it be coexisting if it's been dismissed? At the time the claim arose. Let me back up. The policy behind the set-off statute is to avoid having a situation where one party may have a claim against another and sit and know that there's some claim coming back, sit on its rights until the first claim is time barred. That's the express reason for that statute. So it deals with a situation where you have a time-barred claim on party A's part and another claim on party B's part. Party B sues party A. Party A can't counter-claim or cross-claim for that time-barred claim anymore, but they can use it to set off any damages awarded to party B. In this case... Yeah, I'm not familiar with that. If you sue your bank and you win a bunch of money against the bank and you happen to have a note at that bank, they can set off that note against there. What I'm not familiar with is resurrecting a dismissed breach of contract claim and setting it off against fraud damages. Having only practiced in this state, Your Honor, it's probably unique to California, but it is what the statute says. Thank you. If I could spend a couple of minutes on attorney's fees. Do you have another question? Could you just explain to me really quickly why it is consistent to have a finding, the jury to find that there was infringement but there were zero damages? It's consistent... Outside of the... I'm putting hands. It's consistent because of the specific copyright instruction that we had. The copyright instruction said that you would have infringement if farmers lacked authority to use the PI software after Unicom purported to terminate the agreement in November 2002 and on CPUs D and W after March 14, 2002. So the copyright infringement instruction simply referred to authority. And if the jury agreed with the idea that in order to get authority, you needed the piece of paper that said you have authority to use it on CPU D, it's consistent for the jury to find copyright infringement. The instruction made no reference to breach of contract. So going back to Sun Microsystems, the copyright instruction itself never mentioned the underlying contract. So the no damages occurs because you move it to a CPU you're not authorized to use, but that doesn't mean you've used it beyond the scope of the 5,079 MIPS. With regard to attorney's fees, 1717, another unique California statute, wreaks havoc with courts I've found, provides for the determination of prevailing party status on a breach of contract claim. That's all it does. It's got a narrow little window. If you find that a party succeeded, was prevailing party on the breach of contract, then according to the statute, they would be entitled to an award of fees and other costs. It's not an element of costs. It's not like the copyright statute that says you're awarded fees as part of your costs. It's simply a stepped analysis. If you succeed, you're entitled to your costs. So it is consistent to have two different analyses, one on the contract claim and a separate prevailing party analysis for the rest of the non-contract claims. Sears in California says that. Most importantly, the statute, 1717C, specifically contemplates that. But 1717C says that if you are the prevailing party on the contract and the monies are awarded to you, attorney's fees, and they're greater than what is awarded on other claims, then the amount from the other claims shall be deducted from the attorney's fee of this award and judgment shall be entered in favor of the party who prevailed on the contract claim. The reverse of that is also in the statute. If you lost on some other claim greater than the attorney's fees, then it's netted out and judgment's awarded the other direction. Okay. Here's my thought. Every representation that your client made that was found by the jury to be a misrepresentation arose out of the contract, correct? I mean, arose out of your obligations pursuant to the contract. Why then in winning on the fraud haven't they prevailed on the contract claim if that's where all of the obligations came from that were found to be misrepresentations? The fraud claim was a concealment claim. It was a concealment of the acquisition of the Zaps. Right. And that's only actionable because you had a contract that promised you'd pay for all of them. No. It's only actionable because the jury found, if we read the instruction, that that fraudulent concealment somehow caused some harm to Unicom because it did. Well, it's only a fraudulent concealment because you have a contract that obligates you to pay for it. And that's what I'm saying is that this concealment arises out of the contract, out of representations you made in the contract, your willingness to pay for upgrades when you put it to different CPUs. That's assuming that it's the disclosure of the Zaps. Okay. Let me back up. Instruction number 21, the one I was talking about, substantial performance, which we believe excused farmers from asking for permission under paragraph 3C of the agreement. If the jury found in favor of farmers with regard to that, then its fraud claim was based simply on the concealment, possibly the fact that the suit was filed, that this dragged on for years. We don't know exactly what they were thinking, but the instruction itself only deals with concealment of certain facts, and the acquisition and use of the Zap would be one of those facts. Okay. You've more than used your time. Okay. Does the panel have any time left? Are there any questions of either party? Thank you. The matter, as argued, is submitted for decision. That concludes the court's calendar for this morning. The court stands adjourned. All rise. The court is adjourned.
judges: Jarvey, Schroeder, Tallman